Gen. 311]                                                          311

INSURANCE − VEHICLE LAWS − STATUS OF "PROVIDERS" OF
SERVICES UNDER MOTOR VEHICLE MECHANICAL REPAIR
CONTRACTS LAW

November 23, 1994

*Mr. Dwight K. Bartlett, III*
*Insurance Commissioner of Maryland*

You have requested our opinion on certain issues of statutory
interpretation arising out of the enactment of Chapter 460 of the
Laws of Maryland 1993, which became effective October 1, 1993.
Chapter 460 amended §15-311.2 of the Transportation ("TR")
Article, Maryland Code, which deals with motor vehicle mechanical
repair contracts.[1]  These contracts consist of extended warranties,
extended service contracts, and similar agreements sold in
connection with the sale of motor vehicles.

You have requested an opinion addressing the following
questions:

1.    Is a "provider" under §15-311.2 one who actually
performs the repair work, one who sells the warranty contract, or
someone else altogether?

2.    Does TR §15-311.2 change the Insurance Code's
definition of "insurance" and the "business of insurance" to exempt
"providers" of mechanical repair contracts?  Specifically, are
"providers" engaging in the business of insurance, and, if so, must
they obtain a certificate of authority from the Insurance
Administration and meet all capital and surplus requirements set out
in Article 48A, §§47 through 49 of the Code?

3.    If the providers are not authorized insurers, which agency,
if any, is ultimately responsible for their regulation?

---

[1] When Chapter 460 was enacted, the provision in question was
codified at TR §15-311.1.  Chapter 631 of the Laws of Maryland 1993
redesignated the provision as TR §15-311.2.

For the reasons set forth below, we have concluded as follows:

1.     A provider is any person who has contracted to perform the repair work under the mechanical repair contract.  This person can be either the licensed motor vehicle dealer that sold the contract or a third party.

2.     Chapter 460 exempted "providers" from the requirements of Article 48A.

3.     Neither the Insurance Commissioner nor the Motor Vehicle Administration has been authorized to license or regulate providers.  Regulatory protection to purchasers of these contracts is provided indirectly, however.

# I

## Prior Law

In order to assess the effect of Chapter 460, we must first examine the law prior to the 1993 amendments.  In general, automobile warranties offered by manufacturers or dealers have not been considered to be insurance.  While warranties and insurance contracts are both risk-shifting devices, a "warranty promises indemnity against defects in the article sold, while insurance indemnifies against loss or damage resulting from perils outside of, and unrelated to, defects in the article itself."  42 *Opinions of the Attorney General* 254, 257 (1957).  *See also* 12 Appleman, *Insurance Law and Practice* §7001.

The underlying basis for the distinction between a warranty and an insurance contract is the ability of the warrantor to control the risk.  *See* 42 *Opinions of the Attorney General* at 254 ("[T]he absence of substantial control of the risk by both the promisor and the promisee is a necessary element of a contract of insurance."). In an insurance contract, the risk of loss is beyond the control of either party to the contract.  In a warranty situation, the manufacturer, by properly manufacturing the item, is able to control the risk.  *Id.*

For these reasons, automobile manufacturers and their authorized dealers have historically been entitled to offer extended warranties and vehicle repair contracts without regard to the insurance laws of this State.  Third parties, by contrast, who do not

control the risk of loss by either manufacturing or inspecting the product would be offering an insurance contract by agreeing to accept the risk that the automobile will require repairs during the term of the contract. *See, e.g., Schoepflin v. Tender Loving Care Corp.*, 631 So. 2d 909 (Ala. 1993) ("New Car Protection Plan" sold by third party held to be an insurance contract).

In 1981, the General Assembly adopted the first version of TR §15-311.2. *See* Chapter 575, Laws of Maryland 1981. The title of the bill stated its purpose as "establishing certain insurance requirements for mechanical repair contracts entered into by licensed vehicle dealers." The original statute provided simply:

> (1) Any licensed vehicle dealer who offers, provides, or sells mechanical repair contracts shall maintain adequate insurance reserves, as defined by the Insurance Commissioner, for each such contract for the protection of the purchasing consumer.

> (2) The reserves shall be maintained with an insurer authorized to do business in Maryland on an admitted or surplus lines basis.

Former TR §13-311.1(b). Thus, automobile dealers, which are not subject to the insurance laws of this State, were nonetheless required by statute to maintain insurance to cover their vehicle repair contracts.[2] This provision applied only to mechanical repair contracts "between a licensed vehicle dealer and a customer by which the dealer agrees to perform" the repairs. *See* former TR §15-311.1(a). It did not apply to third parties.

Thus, prior to 1993, Maryland law allowed automobile dealers to offer mechanical repair contracts without regard to the insurance laws of this State. These dealers, however, were required by former TR §15-311.1 to maintain adequate insurance to cover their contracts. Third parties that offered mechanical repair contracts remained subject to all the insurance laws of the State, and entities

---

[2] The Insurance Commissioner determined under this statute that the term "adequate insurance reserves" required the dealer to have an insurance policy from an authorized insurer.

that offered these contracts were therefore required to be authorized insurers.[3]

## II

### The 1993 Amendments

In 1993, the General Assembly passed Chapter 460, substantially amending what is now TR §15-311.2. Chapter 460 did several things. First, the definition of "mechanical repair contract" was broadened from a "contract between a licensed vehicle dealer and a customer by which the dealer agrees to perform [the repairs]" to a "contract sold by a licensed vehicle dealer under which a specified provider agrees to perform [the repairs.]" TR §15-311.2(a)(1). Second, Chapter 460 required the "provider of services," rather than the dealer, to maintain the required reserves. TR §15-311.2(b)(1). In addition, Chapter 460 provided that "[a] policy of insurance providing coverage for all obligations and liabilities incurred by a provider under the terms of a mechanical repair contract shall constitute adequate insurance reserves." §15-311.2(b)(1).

Chapter 460 also provided that the purchaser could make a claim directly against the insurer:

> Any purchaser of a mechanical repair contract shall be entitled to make a direct claim against the insurer issuing a policy of insurance under this subsection upon failure of the specified provider to pay any claim or make any refund or consideration due within 60 days after the proof is filed with the provider.

---

[3] On at least one occasion, the Maryland Insurance Administration enforced this requirement by issuing a cease and desist order and administrative fines against an entity that had offered mechanical repair contracts without meeting the requirements of Article 48A. This action was affirmed by the Circuit Court for Baltimore City. *Griffin Systems, Inc. v. Maryland Insurance Division*, Case No. 88203036/CL84396 (Cir. Ct. Balto. City Dec. 20, 1988).

TR §15-311.2(b)(3).   Finally, in an obvious effort to facilitate consumer claims, Chapter 460 required the mechanical repair contract itself to "clearly and conspicuously set forth the ... name and address of the insurer issuing the policy of insurance ...."

## III

## Scope of "Provider"

In construing TR §15-311.2, we "consider the goals or purpose to be served by the statute and the evils or mischief the General Assembly sought to remedy, and construe the statute in accordance with its general purposes and policies ...." *Gargliano v. State*, 334 Md. 428, 435, 639 A.2d 675 (1994).  *See also, e.g., Tracey v. Tracey*, 328 Md. 380, 387, 614 A.2d 590 (1992).  To implement this objective, we must first examine "the statutory language itself, as the words of the statute, given their ordinary and popularly understood meaning, are the primary source of legislative history." *Gargliano v. State*, 334 Md. at 435.   We are also to consider the textual meaning in light of the bill's context.  *See, e.g., Baltimore County Coalition Against Unfair Taxes v. Baltimore County*, 321 Md. 184, 203, 582 A.2d 510 (1990); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987).

The Legislature defined "mechanical repair contract" as "a contract sold by a licensed vehicle dealer under which a specified provider agrees to perform" the repair work.  The Legislature then imposed various requirements on the "provider of [repair] services" under a contract.

While "provider" is not defined in Chapter 460, the everyday definition of this term would encompass the person who makes available or supplies the repair services.  *See Random House Dictionary of the English Language* 1556 (2d ed. 1987).  *Accord, Clapps v. Waterbury Iron Works, Inc.*, 458 A.2d 1161, 1163 (Conn. Sup. 1983).  The statutory text therefore suggests that the "provider" is the person who has contracted to perform the repair services.  This person may be either the dealer or a third-party, depending on who has contractually agreed to perform the repairs.

In Chapter 460, the Legislature unquestionably broadened the statute.  It now covers not simply licensed vehicle dealers but every "provider of services under a mechanical repair contract."  There is

no reason to suppose that the Legislature meant to include anything less than every provider who contracts to perform the repair work under a mechanical repair contract.

The structure of the statute confirms this analysis. Although only licensed vehicle dealers may sell mechanical repair contracts, under subsection (a)(1) the contract would be between the provider of the services and the customer. Moreover, the provider, and not the dealer, is required to maintain appropriate insurance in order to protect consumers. The Legislature did not frame this statute to apply to some, but not all, providers of repair services.

In sum, the language, history, and structure of the statute demonstrate that the "provider of services" under TR §15-311.2 is the person who is contractually obligated to provide repair services pursuant to a mechanical repair contract. This person may be, but is not required to be, a licensed vehicle dealer.

**IV**

**Exemption of Providers From Insurance Regulation**

You ask whether, under Chapter 460, "providers" are in the business of insurance and whether they are therefore required to obtain a certificate of authority from the Insurance Commissioner after meeting all capital and surplus requirements set forth in Article 48A. In our opinion, Chapter 460 exempts providers from the requirements of the Insurance Code.

As discussed in Part I above, mechanical repair contracts sold by third parties would generally be considered contracts of insurance, and therefore the seller would be subject to all of the requirements of Article 48A, including requirements as to licensing, solvency, and capital. The General Assembly, however, surely may exempt sellers of insurance products from licensing and regulation. The only question is whether the General Assembly intended providers under TR §15-311.2 to be exempt from Article 48A.

The language of the statute does not explicitly exempt providers from regulation by the Insurance Commissioner. Nevertheless, the legislative history, purpose, and structure of the amendments to TR §15-311.2 disclose an unmistakable intent to exempt providers from the dictates of the Insurance Code. *See*

*Williams v. State*, 329 Md. 1, 15-16, 616 A.2d 1275 (1992) (directing courts to discern "legislative intent from the entire statutory scheme, as opposed to scrutinizing parts of a statute in isolation").

Chapter 460 was adopted in response to the failure of numerous vehicle repair companies and the concomitant inability of the public to enforce their repair contracts. As a committee floor report explains:

> In recent years the Motor Vehicle Administration has been receiving many complaints from consumers stating [that] their vehicle extended warranties are not being honored (more than 200 complaints a year).
>
> Recently 15 third party sellers of extended service contracts have gone out of business because of loss ratios as high as 150 percent; these were not insurers, manufacturers, or distributors.
>
> \* \* \*
>
> Presently, when dealers sell mechanical repair contracts the MVA requires the dealer to have adequate insurance reserves; however, in this situation the consumer does not have a direct guarantee since the "policy" is written between the warranty company and the dealer.

House Economic Matters Committee, Floor Report on Senate Bill 550 (1993).

To rectify this situation, the General Assembly could have simply prohibited any person from offering mechanical repair contracts unless the person was an authorized insurer and fully regulated by the Insurance Commissioner. The General Assembly did not do so.[4] Instead, the Legislature required the provider to

---

[4] This approach had been tried unsuccessfully the previous year. House Bill 270 of 1992 would have prohibited anyone, including dealers, from selling mechanical repair contracts unless the person was an

(continued...)

"maintain adequate insurance reserves" or "a policy of insurance" to cover its obligation under the contracts. If the Legislature intended to require providers to be fully licensed and regulated as insurers, there would have been no reason to require the provider to maintain insurance. Indeed, the contract between the provider and the customer must set forth the name and address of the insurer, and the customer has the right to file a claim directly against the insurer if the provider does not perform under the contract. These provisions would be irrelevant if the provider was also required to be an insurer.

Prior to the 1993 amendments, moreover, licensed vehicle dealers were entitled to offer mechanical repair contracts without any requirement that the dealer be licensed or regulated by the Insurance Commissioner, if the dealer maintained adequate insurance reserves. At the same time, non-dealers who were not licensed and regulated by the Insurance Commissioner were not entitled to enter these contracts at all. Chapter 460 was intended to alter this arrangement and plainly authorizes third-party providers to enter mechanical repair contracts on the same basis as dealers. This conclusion is inescapable from the statutory change in language from "dealer" to "provider."

The legislative history also supports this conclusion. The bill that eventually became Chapter 460 would have added a new subtitle to the Insurance Code.[5] As originally drafted, the bill indicated that mechanical repair contracts could be sold by anyone if the warranty contract was backed by an insurance contract. The Fiscal Note on Senate Bill 550 explained this purpose as follows: "This bill prohibits the sale of a 'motor vehicle service contract' (defined) unless the service contract provider is insured under a 'motor vehicle service contract reimbursement insurance policy' (defined) issued by an insurer licensed to do business in Maryland." Although the bill was substantially amended as it worked its way through the General

---

[4] (...continued) authorized insurer. This bill passed the House but was defeated in the Senate. While the failure of House Bill 270 is not determinative, it does reinforce our belief that the Legislature did not intend in the 1993 amendments to require providers to be authorized insurers.

[5] The original short title of the bill was the "Motor Vehicle Contract Reimbursement Insurance Act."

Assembly, this central theme remained unchanged. As a result, the Senate floor report states:

> SB 550, as amended, provides that a person may provide services under a mechanical repair contract sold by a licensed vehicle dealer *if* the provider maintains adequate insurance reserves for each contract. A policy of insurance providing coverage for all obligations and liabilities incurred by the provider under the contract's terms constitutes adequate insurance reserves.
>
> A purchaser of a mechanical repair contract is entitled to make a direct claim against the insurer issuing the policy upon failure of the provider to pay a claim or make a refund or consideration.

Senate Finance Committee, Floor Report on Senate Bill 550 (1993).

There is nothing in the legislative history of Senate Bill 550 to indicate in the slightest that the Legislature intended all persons who offered mechanical repair contracts to be authorized insurers. In fact, the contrary is true. By requiring providers under mechanical repair contracts to have adequate insurance, the Legislature indicated its understanding that providers would not themselves be considered insurers.

The most reasonable reading of Chapter 460, and the one that best effectuates the evident legislative purpose, is that only licensed vehicle dealers may sell mechanical repair contracts, but that these contracts can be entered into and performed by either a dealer or non-dealer. In either case, the provider of the repair services is required to have adequate insurance coverage approved by the Insurance Commissioner and open to claims by the consumer. In this way, the legislation protects consumers against the failure of repair companies without unduly burdening mechanical repair providers.

Thus, in our view, providers of mechanical repair contracts, sold by licensed vehicle dealers and backed by insurance policies approved by the Insurance Commissioner, are not themselves required to be authorized insurers under Article 48A. Accordingly,

neither the licensing nor the regulatory requirements of Article 48A apply to such providers.


# V

## Regulation of Mechanical Repair Contracts

Finally, you have asked about the respective regulatory responsibilities of the Insurance Commissioner and the Motor Vehicle Administration with regard to mechanical repair providers. The General Assembly has not made any provision for the licensing or regulation of mechanical repair contractors. As a result, neither the Insurance Commissioner nor the Motor Vehicle Administrator has specific regulatory jurisdiction over these providers. Regulatory protection is provided indirectly, however.

First, the Insurance Commissioner fully regulates the insurance carriers that insure each obligation under the mechanical repair contract as required by TR §15-311.2. The Commissioner, of course, has the authority and the responsibility to ensure that these insurance carriers are solvent and in full compliance with the Insurance Code. If a provider fails to honor its contractual obligation, the required insurance should be readily available to the consumer.

Second, the Motor Vehicle Administrator licenses and regulates the vehicle dealers that are authorized by TR §15-311.2 to sell mechanical repair contracts. *See* TR §§12-104(b) and 15-302(a). If a licensed vehicle dealer sold contracts on behalf of a mechanical repair provider that did not meet the insurance requirements of TR §15-311.2, the Administrator could take regulatory action against the licensee under TR §15-315(a)(4). This authority is an obvious incentive for dealers to meet the requirements of TR §15-311.2, including the requirement that the contract "clearly and conspicuously set forth ... the name and address of the insurer ...."[6]

---

[6] The dealer may also have responsibilities to its customers flowing out of its contract with them or arising under the Consumer Protection Act, §13-101 *et seq.* of the Commercial Law Article, Maryland Code.

## VI

## Conclusion

In summary, it is our opinion that, under TR §15-311.2, a provider of repair services is the person who is contractually obligated to perform the mechanical repair contract. This person may be the licensed vehicle dealer or a third party. In either case, the provider is not itself subject to Article 48A but must maintain adequate insurance to cover each mechanical repair contract. The Maryland Insurance Commissioner has the responsibility to regulate the insurance carrier, while the Motor Vehicle Administrator has the responsibility to license and regulate the vehicle dealers that are statutorily entitled to sell mechanical repair contracts.

J. Joseph Curran, Jr.
*Attorney General*

Dennis W. Carroll
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*